**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**

Keshuna Abcumby,

Plaintiff,

Case No.:

vs.

Officer Knight, in her official capacity and individually, Officer Reed, in her official capacity and individually, Officer Barrow, in her official capacity and individually, Officer Brower, in her official capacity and individually, Officer Davis, in her official capacity and individually, Director Heidi Washington, in her official capacity and individually, and Warden Howard, in his official capacity and individually.

Defendants.

---

**Lennox Emanuel, PLC**
Lennox Emanuel (P59251)
Attorney for Plaintiff
15565 Northland Drive
Ste. 202E
Southfield, MI 48075
(248) 568-4904
lemanuel24@comcast.net

---

**COMPLAINT AND JURY DEMAND**

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint

s/ Lennox Emanuel
Lennox Emanuel (P59251)

## INTRODUCTION

1. Plaintiff Keshuna Abcumby is a practicing Muslim incarcerated by the Michigan Department of Corrections. From September 29, 2023 to November 6, 2023, Defendants deliberately prevented her from observing the core obligations of her faith: they obstructed and deprived her of Ramadan fast by confiscating religious items making it impossible to properly and correctly observe Ramadan; confiscated her Qur'an, religious literature, prayer rug and head covering – turban, without cause; and instituted a sham grievance process that failed to examine the Plaintiff's complaint but was a rubber stamp approving the illegal and unconstitutional conduct of the Defendants.

2. There was never a charge or allegation of misconduct to support the confiscation.

3. Rather, the Defendants retaliated after a verbal argument with the Plaintiff by confiscating her religious items and depriving her of her constitutional First Amendment Rights to freely practice her Muslim faith.

4. Plaintiff brings this action under 42 U.S.C. § 1983 for violations of the Free Exercise Clause of the First Amendment, the First Amendment right to petition free from retaliation, and the Equal Protection Clause of the Fourteenth Amendment, violation of her Due Process rights under the Fourteenth Amendment and State law Intentional Infliction of Emotional Distress. Plaintiff seeks compensatory and nominal damages, punitive damages against the individual Defendants for their reckless and callous indifference to her federally protected rights, and attorney's fees and costs.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) and (4) because Plaintiff seeks redress for the deprivation, under color of state law, of rights secured by the Constitution and by Acts of Congress providing for the protection of civil rights.

6. This Court is authorized to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because all of the events and omissions giving rise to Plaintiff's claims occurred at the Huron Valley Women's Correctional Facility located in the township of Ypsilanti, Washtenaw County, State of Michigan, and under 28 U.S.C. § 1391(b)(1) because at least one Defendant resides in this District and all Defendants reside in Michigan.

## PARTIES

8. Plaintiff Keshuna Abcumby, MDOC #462754, is, and at all relevant times was, a prisoner in the custody of the Michigan Department of Corrections. At all relevant times she was confined at the Huron Valley Women's Correctional Facility located in the township of Ypsilanti, Washtenaw County, State of Michigan. She remains confined there with a prospective release date of November 2026.

9. Defendant Jeremy Howard is, and at all relevant times was, the Warden of the Huron Valley Women's Correctional Facility, responsible for the operation of the facility, the

supervision of its staff, and the implementation of MDOC religious-practice policy at the facility. The Warden personally approved or directed the conduct described below. The Warden is sued in his individual capacity for damages.

10. Defendant officer Knight is, and at all relevant times was, a Corrections Officer employed by MDOC at the Huron Valley Women's Correctional Facility. She is sued in her individual capacity for damages.

11. Defendant officer Reed is, and at all relevant times was, a Corrections Officer employed by MDOC at the Huron Valley Women's Correctional Facility. She is sued in her individual capacity for damages.

12. Defendant officer Barrow is, and at all relevant times was, a Corrections Officer employed by MDOC at the Huron Valley Women's Correctional Facility. She is sued in her individual capacity for damages.

13. Defendant officer Davis is, and at all relevant times was, a Corrections Officer employed by MDOC at the Huron Valley Women's Correctional Facility. She is sued in her individual capacity for damages.

14. Defendant officer Rum Brower is a MDOC Supervisor and at all relevant times was, a Corrections Officer employed by MDOC at the Huron Valley Women's Correctional Facility. She is sued in her individual capacity for damages.

15. Defendant Director Heidi Washington is, and at all relevant times was, a Corrections Officer employed by MDOC at the Huron Valley Women's Correctional Facility. She is sued in her individual capacity for damages.

16. At all relevant times, each individual Defendant acted under color of state law and within the scope of his or her employment or contract.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Sincerely Held Religious Beliefs

17. Plaintiff has been a practicing Muslim since before 2018 and she was designated as Muslim in MDOC records since 2018, the year of incarceration.

18. Plaintiff sincerely believes that Islam requires her to: (a) fast from dawn to sunset during the month of Ramadan, eating only before dawn (suhur) and after sunset (iftar); (b) consume only halal food and abstain from pork and pork-derived products at all times; (c) perform five daily prayers (salat), using a clean prayer rug; (d) read and study the Qur'an; and (e) keep her head covered, especially in the presence of males.

19. Plaintiff's beliefs are religious in nature and sincerely held. She has consistently observed them throughout her incarceration, including by participating in Ramadan in - 2019, 2020, 2021, 2022, and maintaining a Qur'an and prayer rug approved by facility staff.

### B. Confiscation of Qur'an and other religious items including head covering

20. On September 29, 2023, Plaintiff had a verbal interaction and made a verbal comment to Corrections Officer Knight who became incensed at the comment.

21. In retaliation, on September 29, 2023, Knight, Reed, Barrow and Davis entered Plaintiff's cell and confiscated her turbans, Qur'an, prayer rug and all religious literature and religious items.

22. Plaintiff was never charged with a violation of prison rules or informed of a violation of any prison rule.

23. Without providing Plaintiff notice, an opportunity to respond, or any hearing, Defendant Rum Brower and Director Heidi Washington approved the confiscation despite direct pleas from the Plaintiff to all the Defendants to return the items especially in light of the approaching month of Ramadan in October 2023.

24. As a result, from September 29, 2023 through November 6, 2023, a period of approximately 38 days, Plaintiff was willfully and intentionally deprived of her ability to properly practice her Muslim faith.

25. Defendants Knight, Reed, Barrow and Davis mocked Plaintiff during that time period, calling her a "fake" Muslim and outrageously offered her a bible instead of returning her confiscated items.

26. Plaintiff was thus forced to violate a central tenet of her faith (reading the Qur'an, head covered and using her prayer rug and reading religious literature) during Ramadan and in general. Plaintiff became physically ill – crying spells, headaches, anxiety, lack of sleep and chest pains. During this period Plaintiff was unable to visit the infirmary because she was not properly attired – no head covering and did not want to be seen by male corrections officers without her head covering. Plaintiff's inability to properly observe Ramadan forced her to break the religious fast as she had no Qur'an, religious literature and prayer rug and head covering.

**C. Grievances and Retaliation**

27. Plaintiff filed a Step I grievance regarding the deprivations described above on September 30, 2023. The grievance was rejected without explanation.

28. On November 17, 2023, Plaintiff filed a Step II grievance appeal which the Warden rejected as "containing multiple issues."

29. Plaintiff filed a Step III appeal and that was also rejected without comment, a hearing or witnesses.

**D. Exhaustion of Administrative Remedies**

30. Plaintiff pursued each grievance through Step III of the MDOC grievance process under MDOC Policy Directive 03.02.130. Each grievance was denied through Step III. Plaintiff's grievances regarding unauthorized confiscation of religious items were rejected on procedural grounds that rendered the process unavailable. The Plaintiff has exhausted all available administrative remedies within the meaning of 42 U.S.C. § 1997e(a).

**E. Defendants' State of Mind**

31. Each individual Defendant knew that Plaintiff was a practicing Muslim, knew of her on-going and uninterrupted practice of her Muslim faith since 2018, and knew that the conduct described above would prevent her from practicing her religion and inflict grievous trauma.

32. Each individual Defendant knew, from MDOC policy, training, and clearly established law, that prisoners retain the right to the free exercise of religion and that officials

may not burden that exercise without a legitimate penological reason, may not treat one faith less favorably than others, and may not retaliate against a prisoner.

33. Defendants acted intentionally, or with reckless and callous indifference to Plaintiff's federally protected rights. No legitimate penological interest supported their conduct.

34. The Defendants have never offered a reason for the confiscation of the religious items.

35. Plaintiff was never charged with a violation of prison rules that warranted confiscation of her religious items.

36. Plaintiff was never provided with a reason for confiscation of her religious items.

**I. Injuries**

37. As a direct and proximate result of Defendants' conduct, Plaintiff suffered: (a) the deprivation of her constitutional and statutory rights to the free exercise of religion, which is an injury in its own right; (b) physical injury, including chest pains, dizziness, weakness, and stomach pain; (c) spiritual harm, including the inability to complete the Ramadan fast, read the Qur'an, and pray properly; (d) loss of property; (e) humiliation, anxiety, and emotional distress.

## CLAIMS FOR RELIEF

### COUNT I

Violation of the Free Exercise Clause of the First Amendment
42 U.S.C. § 1983 — Against the Defendants in their Individual Capacities for Damages

38. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

39. The Free Exercise Clause of the First Amendment, applicable to the States through the Fourteenth Amendment, protects Plaintiff's right to practice her religion while incarcerated. Sincerely held religious beliefs require accommodation by prison officials.

40. Plaintiff's religious beliefs regarding the Ramadan fast, daily prayer, and study of the Qur'an are sincerely held and religious within her own scheme of things.

41. Defendants substantially burdened Plaintiff's religious exercise by: (a) confiscating her Qur'an and prayer rug; (b) confiscating her religious head coverings; and (c) confiscating her other religious items of literature and other physical motifs of the religion. Officials substantially burden religious exercise when they placed substantial pressure on an adherent to modify her behavior and to violate her beliefs or effectively bar her sincere faith-based conduct and barring a prisoner from religious celebrations or group worship is a substantial burden even if she may pray alone.

42. Defendants' actions were not reasonably related to any legitimate penological interest. There is no valid, rational connection between the deprivations and any legitimate governmental interest; Plaintiff had no alternative means of exercising the rights at issue; accommodation would have had no appreciable impact on guards, other prisoners, or prison resources. There was no reason to confiscate in the first instance. The conduct was arbitrary, capricious and deliberately intended to cause harm and mental trauma.

43. Defendants' policies and practices are also not neutral or generally applicable, because they singled out Muslim practice for less favorable treatment than comparable secular and other religious activity.

44. Each individual Defendant personally participated in, directed, or knowingly approved the violations described above, and is liable for his or her own unconstitutional conduct.

45. The rights at issue were clearly established at the time of Defendants' conduct, such that every reasonable official would have understood that the conduct violated them. The unlawfulness of Defendants' conduct was apparent in light of pre-existing law even if the very action in question had not previously been held unlawful.

46. As a direct and proximate result, Plaintiff suffered the injuries described above and is entitled to compensatory, nominal, and punitive damages against the individual Defendants.

**COUNT II**

First Amendment Retaliation

(42 U.S.C. § 1983 — Against the Defendants in their Individual Capacity)

47. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

48. Plaintiff engaged in conduct protected by the First Amendment when engaged in a verbal conversation with Knight.

49. Defendants Corrections Officers took adverse action against Plaintiff by confiscating her religious items because they knew that would harm the Plaintiff emotionally and physically and would cause intended trauma. They issued no misconduct to support the confiscation. That action would deter a person of ordinary firmness from continuing to engage in protected conduct.

50. The adverse action was motivated, at least in part, by Plaintiff's protected conduct, as shown by, among other things, the close temporal proximity between Plaintiff's words to Knight and the confiscation of Plaintiff's religious items, Defendants' statement to Plaintiff at the time, and conduct establish retaliatory motive

51. Defendants would not have taken the same action in the absence of Plaintiff's protected conduct.

52. At the time of Defendants' conduct, it was clearly established that prison officials may not retaliate against a prisoner for simple words that did not violate prison rules by confiscating her religious items or causing a loss of privilege.

53. Defendants acted intentionally and with the purpose of punishing and deterring Plaintiff's exercise of his First Amendment rights. As a direct and proximate result, Plaintiff suffered the injuries described above and is entitled to compensatory, nominal, and punitive damages.

**COUNT III**

Violation of the Equal Protection Clause of the Fourteenth Amendment
(42 U.S.C. § 1983 — Against the Defendants in their Individual Capacities for Damages)

54. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

55. The Equal Protection Clause prohibits state officials from intentionally treating prisoners differently from similarly situated prisoners on the basis of religion, a suspect classification, without justification.

56. Defendants intentionally treated Plaintiff, a Muslim less favorably than similarly situated Christian prisoners by confiscating her religious items without any reason while allowing other prisoners to continue to practice their Christian religion without penalty.

57. Defendants acted with discriminatory intent or purpose, as shown by, among other things, their taunting of Plaintiff and calling her a "fake" Muslim and offering her a bible instead of returning her Qur'an.

58. The differential treatment was not narrowly tailored to any compelling governmental interest and was not even reasonably related to a legitimate penological interest.

59. It was clearly established at the time of Defendants' conduct that prison officials may not intentionally favor some faith groups over others by confiscating the religious items without cause of a Muslim prisoner while leaving members of the Christian faith unbothered and free to practice their religion.

60. As a direct and proximate result, Plaintiff suffered the injuries described above and is entitled to compensatory, nominal, and punitive damages.

**COUNT IV**

Intentional Infliction of Emotional Distress – All Defendants

61. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

62. The Defendants' actions were taken under color of state law.

63. Defendants' conduct as outlined above was outrageous, intentional, criminal, grossly negligent and cruel to Plaintiff.

64. Defendants' conduct as outlined above was extreme, outrageous and of a character as not to be tolerated by a civilized society.

65. Defendants' conduct as outlined above was for an ulterior motive.

66. Defendants' conduct resulted in severe and serious emotional distress for Plaintiff through their reckless and deliberate and intentional conduct.

**Qualified Immunity is not a bar to Plaintiff's claims**

67. Qualified immunity shields officials from damages only where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The inquiry asks whether the facts, viewed most favorably to Plaintiff, show a constitutional violation and whether the right was clearly established such that a reasonable official would have known the conduct was unlawful.

68. Clearly established law is determined by looking first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and courts within it, and finally to decisions of other circuits. Officials can be on notice that their conduct violates established law even in novel factual circumstances.

69. Each individual Defendant's entitlement to qualified immunity must be assessed on the basis of that Defendant's own conduct, and, as alleged above, each Defendant personally violated rights that were clearly established by the authorities cited in Counts I, II, III, and IV.

70. Because the reasonableness of Defendants' conduct depends on facts that must be developed in discovery, resolution of qualified immunity at the pleading stage would be premature.

## ALLEGATIONS SUPPORTING PUNITIVE DAMAGES

71. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

72. The conduct of Defendants was motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiff's federally protected rights, including in that Defendants:

(a) knew that Plaintiff was a practicing Muslim since incarceration in 2018 and that confiscation of religious items would effectively deny her First Amendment right to continue to practice her deeply held religious belief and faith and way of life;

(b) removed Plaintiff's religious items without any cause – never charged her with a violation;

(c) made derogatory remarks about her faith and tried to force her to accept a bible instead of returning her items of her Muslim faith;

(d) retaliated against Plaintiff for expressing a first amendment right to make a verbal comment to an officer - conduct that by its nature is undertaken with the purpose of infringing federally protected rights; and

(e) acted in knowing disregard of MDOC policy, their training, and clearly established law.

73. Punitive damages are available under § 1983 when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

74. An award of punitive damages against each of these Defendants, in their individual capacities, is necessary to punish them for their conduct and to deter them and others from similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and:

(a) Declare that Defendants' acts, policies, and practices described above violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

(b) Award compensatory damages against Defendants in their individual capacities in an amount to be determined at trial;

(c) Award nominal damages against each such Defendant for each violation of Plaintiff's rights;

(d) Award punitive damages against Defendants in their individual capacities in an amount to be determined by the jury;

(e) Award Plaintiff her reasonable attorney's fees and costs under 42 U.S.C. § 1988(b), subject to the limitations of 42 U.S.C. § 1997e(d);

(f) Award pre- and post-judgment interest as permitted by law; and

(g) Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted:
**LENNOX EMANUEL, PLC**

By: __s/Lennox Emanuel__________
Lennox Emanuel (P59251)
Attorney for Plaintiff
15565 Northland Drive
Ste. 202E
Southfield, MI 48075
(248) 568-4904
lemanuel24@comcast.net

Dated: September 28, 2026